UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,  Plaintiff,  -against-  FERNANDO J. ESPUELAS, JACK C. CHEN, STEVEN J. HELLER, PETER R. MORALES, WALTER MÖLLER, BETSY D. SCOLNIK, ADRIANA J. KAMPFNER, and PETER E. BLACKER,  Defendants. | 06 Civ. 2435 (RJH)  **MEMORANDUM OPINION AND ORDER** |

Richard J. Holwell, District Judge:

This is an enforcement action by the Securities Exchange Commission ("SEC") against former executives of StarMedia Network, Inc. ("StarMedia" or the "Company") for accounting fraud. The SEC brings claims under the Securities Act of 1933 ("Securities Act") and the Exchange Act of 1934 ("Exchange Act"). In a previous decision, the Court allowed certain claims against defendant Betsy Scolnik ("Scolnik") to survive her motion to dismiss. *SEC v. Espuelas*, 579 F. Supp. 2d 461 (S.D.N.Y. 2008) ("*Espuelas I*"). Now Scolnik moves for summary judgment on those claims. For the reasons given below, Scolnik's motion is granted.

## BACKGROUND

The SEC's allegations in this action are set forth in detail in two other decisions: *Espuelas I*, 579 F. Supp. 2d 461, in which the Court dismissed in part the SEC's original

1

complaint, and *SEC v. Espuelas*, No. 06-2435, --- F. Supp. 2d ---, (S.D.N.Y. March 26, 2010) ("*Espuelas II*"), in which the Court resolved defendants' motion to dismiss the SEC's amended complaint. Familiarity with those opinions is presumed. Here the Court sets forth only those facts relevant to the resolution of this motion. Except where they are described as alleged or disputed, the following facts are not in dispute.

StarMedia was an Internet media company that targeted Spanish- and Portuguese-speaking markets. (Pltf.'s 56.1 Stmt. ¶ 1.) Scolnik worked for the company from 1998 through November 2001. (*Id.* ¶ 2.) Beginning in April 1998, Scolnik was the Vice President of Business Development. (Def.'s 56.1 Stmt. ¶ 8.) In February 1999, she became Senior Vice President for Strategic Development, and in May 2001, she was promoted to be an Executive Vice President. (*Id.* ¶ 9.) Scolnik summarizes her work as "identifying and closing strategic deals, focusing on e-commerce opportunities, building distribution relationships, and opening and staffing offices in Latin America." (*Id.* ¶ 7.) After becoming Vice President, Scolnik took on more responsibility to develop strategies for e-commerce and distribution; later, as Senior Vice President, Scolnik worked on content development as well. (*Id.* ¶¶ 8–9.) Scolnik asserts that preparing, reviewing, or approving company filings or public statements was never part of her job duties. (*Id.* ¶ 11.) The SEC disputes that claim. It relies on the declaration of Michael Hartman, StarMedia's general counsel, that Scolnik "had one of the broadest roles in the company, after Fernando Espuelas and Jack Chen," and that "she interacted at the highest levels with sales, business development, revenue development, and the strategic planning of the company." (Hartman Decl. ¶ 58; Pltf.'s 56.1 Stmt. ¶ 77.)

This litigation has its source in StarMedia's recognition of revenue for certain transactions it undertook in 2000 and 2001. In late 2001, StarMedia restated its financial statements to correct the accounting for these transactions, including the so-called "contingent transactions." (Pltf.'s 56.1 Stmt. ¶¶ 6–11; Def.'s Response to Pltf.'s 56.1 Stmt. ¶¶ 6–11.) In the contingent transactions, StarMedia allegedly agreed to provide services to another party that was either not obligated to pay or was obligated to pay only if it approved the services. (Am. Compl. ¶¶ 47, 50.) StarMedia then allegedly reported revenue on the transactions. (*Id.* ¶¶ 48, 51.) The SEC asserts that, in 2000 and 2001, StarMedia struck deals like this with two companies, Groupe Danone ("Danone") and AMG International, Inc. ("AMG"). For example, in late 2000, it contracted with AMG to supply advertising for $500,000 and recorded the same amount as revenue, even though AMG had paid only $10,000 up front, with the rest contingent on its approval of the services. (*Id.* ¶ 47.) When AMG later found the services unacceptable, it did not pay the remaining $490,000. (*Id.* ¶ 49.) StarMedia also provided services to Danone at no charge as an incentive for Danone to hire StarMedia to work on a project in Latin America. But StarMedia still recorded the transactions as if they were ordinary sales, and reported revenue from it in amounts as large as one million dollars, in the fourth quarter of 2000. (*Id.* ¶ 50.)[1]

According to the SEC, Scolnik played a role in these deals. The SEC claims that she, along with defendants Adriana J. Kampfner ("Kampfner") and Peter E. Blacker ("Blacker"), agreed that StarMedia would provide services to AMG on a contingent

---

[1] Because the parties' Rule 56.1 statements do not detail the SEC's general allegations, the Court relies on the Amended Complaint for this account. Scolnik does not dispute the fact that there were contingent deals with AMG and Danone; she disputes only the accuracy of the SEC's allegations about her involvement in and contemporaneous knowledge of these deals. (*See* Def.'s 56.1 Stmt. ¶¶ 30–31, 57.)

3

basis.  (*Id.* ¶ 47.)  Although Scolnik allegedly knew that StarMedia's finance department required accurate insertion orders or contracts to enable it to properly report revenue, she did not report the oral contingency with AMG to the department.  (*Id.* ¶¶ 47, 54.)  In addition, the Danone transaction was negotiated after "pressure from Scolnik."  (*Id.* ¶ 50.)  Scolnik also allegedly played a part in misstating revenue from the transactions in SEC filings.[2]  In its 10-K for the year ended 2000 and its 10-Qs for the first two quarters of 2001, StarMedia allegedly misstated the amount of its barter revenue and the percentage of barter revenue compared to total revenue.  (*Id.* ¶ 7.)

Scolnik disputes the SEC's allegations that she intended StarMedia to record revenue from these transactions, or that she even knew the transactions included contingencies until late in the second quarter of 2001, during a company investigation.  (Def.'s Mem. 13, 15–20.)  She argues that the SEC has offered no facts to support its claims.  (*Id.* 15–20.)

## PROCEDURAL HISTORY

After StarMedia restated its revenue in late 2001, the SEC began an investigation into the company.  It obtained documents from StarMedia, the defendants, and third parties, including the company's outside auditor, Ernst & Young. (Pltf.'s Response to Def.'s 56.1 Stmt. ¶ 2.)  In 2006, the SEC initiated this action.  The defendants moved to dismiss the original complaint, and the Court granted that motion as to several claims against Scolnik.  But the claims relating to her involvement in the contingent

---

[2] The amended complaint also alleged that Scolnik was responsible for misstatements to a consortium of potential investors, spearheaded by BellSouth, in 2001.  While trying to garner financing from the BellSouth group of investors, StarMedia executives presented financial information to the group that allegedly misstated the company's revenue for 2000 and the first quarter of 2001.  (Am. Compl. ¶¶ 120–121.)  The Court held in *Espuelas II*, No. 06-2435, --- F. Supp. 2d ---, ---, slip op. at 16 (S.D.N.Y. March 26, 2010), that this second kind of misstatement was deficiently alleged against Scolnik.

4

transactions—claims under Section 17(a) of the Securities Act, Section 10(b) of the Exchange Act, Rule 10b-5, and Rule 13b2-1—survived dismissal.  The SEC then filed an amended complaint, and several defendants again moved to dismiss.  Scolnik joined in that motion except as to the claims against her that had already withstood dismissal.  She separately filed this motion for summary judgment on those claims.

## STANDARD

A court must grant summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The court must resolve all ambiguities and draw all factual inferences in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

A party opposing summary judgment "may not rely merely on allegations or denials in its own pleading; rather, its response must—by affidavits or as otherwise provided in this rule—set out specific facts showing a genuine issue for trial."  Fed. R. Civ. P. 56(e).  As the Court has noted, "[t]his requirement has particular relevance when a party's responsive documents are long on speculation and short on specific facts." *Medici Classics Productions, LLC v. Medici Group, LLC*, -- F. Supp. 2d --, 2010 WL 437444, at *3 (S.D.N.Y. Feb. 9, 2010); *see Woodman v. WWOR-TV, Inc.*, 411 F.3d 69, 85 (2d Cir. 2005) ("The law is well established that conclusory statements, conjecture, or speculation are inadequate to defeat a motion for summary judgment.").

## DISCUSSION

**I.     Violations of Sections 17(a) and 10(b) and Rule 10b-5**

Scolnik requests summary judgment for two principal reasons: that the SEC cannot attribute any misstatement to her, and that, even if it could, none of the evidence it has developed in its investigation suggests that she acted with scienter.  The Court agrees that none of the evidence the SEC has collected to date proves much of anything against Scolnik, and certainly not that she acted with scienter.  And the SEC has collected a substantial amount of evidence.  The fruit of its investigation includes documents from StarMedia, all named defendants, the company's external auditor, and others, as well as the SEC's depositions of eighteen people and multiple interviews of some witnesses.  (Def.'s 56.1 Stmt. ¶¶ 2–3.)[3]  Still, the SEC argues that it would be premature to grant summary judgment while formal discovery in this action is yet in its infancy.  (*See* Pltf.'s Opp. 14 (summary judgment inappropriate where "[d]eposition discovery is yet to begin").)

**A**

As an initial matter, the Court acknowledges the SEC's right to engage in discovery pursuant to the Federal Rules of Civil Procedure.  "[T]here is no authority which suggests that it is appropriate to limit the SEC's right to take discovery based upon the extent of its previous investigation into the facts underlying its case . . . ."  *SEC v. Sargent*, 229 F.3d 68, 80 (1st Cir. 2000) (quoting *SEC v. Saul*, 133 F.R.D. 115, 118 (N.D. Ill. 1990)); *Hickman v. Taylor*, 329 U.S. 495, 507 (1947) ("[T]he deposition-discovery

---

[3] The SEC disputes the allegation that it has conducted the extensive investigation Scolnik describes, but only "on the basis that the alleged facts . . . are not material facts because . . . [they] have no bearing on the claims against Scolnik . . . ."  (Pltf.'s Response to Def.'s 56.1 Stmt.)

6

rules are to be accorded a broad and liberal treatment."); *SEC v. Softpoint, Inc.*, 958 F. Supp. 846, 857 (S.D.N.Y. 1997) (Sotomayor, J.) (distinguishing between "administrative inquiries" and "discovery"). The court in *Saul* reasoned that, though "[t]he SEC's motives and concerns in [the investigation] setting may not be dramatically different from those which currently underlie its preparation for trial[,] . . . the contexts are sufficiently different to merit further discovery once the charges have been made and the parties are at issue." *Saul*, 133 F.R.D. at 118. Now that the SEC has sifted through its investigatory findings, filed suit, and had the benefit of this Court's rulings, it may wish to recalibrate its approach to discovery. During the investigation, for example, it asked questions in the service of determining whether to bring suit. Now it may be clear that other information is relevant, and the SEC will want to ask questions to elicit it.

Given the SEC's right to take discovery and flesh out the possibility that Scolnik acted with scienter, her motion might seem premature. The reason the Court finds it is not is that the SEC will not be able to prove its case against Scolnik even if it does manage to demonstrate scienter—say, by uncovering some evidence that ties her to the contingent features of the relevant transactions. This is so because the facts upon which the SEC seeks to attribute StarMedia's misstatements to Scolnik are, as a matter of law, insufficient to do so.

**B**

The SEC's claims against Scolnik[4] are premised on fraudulent misstatements that StarMedia made in SEC filings. But "a defendant must actually make a false or

---

[4] Those claims are for violating Section 17(a)(1) of the Securities Act and Section 10(b) of the Exchange Act, and Rule 10b-5. The Court has never understood the SEC to allege violations of Section 17(a)(2) and (a)(3), and in any case it considers such claims to have been abandoned. *See Espuelas II*, --- F. Supp. 2d at ---, slip op. at 14 n.8.

7

misleading statement in order to be held liable under Section 10(b)." *Wright v. Ernst & Young LLP*, 152 F.3d 169, 175 (2d Cir. 1998) (internal quotation marks and citation omitted); *In re Refco Sec. Litig.*, 503 F. Supp. 2d 611, 641 (S.D.N.Y. 2007) (Lynch, J.) (quoting *Wright*). More recently, the Second Circuit has said that misstatements can be attributed to an executive who "was primarily responsible for [the company's] communications with investors and industry analysts," and who "was involved in the drafting, producing, reviewing and/or disseminating of the false and misleading statements issued by [the company] during the class period." *In re Scholastic Corp.*, 252 F.3d 63, 76 (2d Cir. 2001).

The requirement that an executive be personally involved in preparing a group-published misstatement presents some difficulty for plaintiffs, who—especially before discovery—will often have no way of knowing which person prepared what, just that somebody in the company did. Thus in some circuits, including the Second, a doctrine has developed called group pleading, under which plaintiffs can "rely on a presumption that statements in prospectuses, registration statements, annual reports, press releases, or group-published information, are the collective work of those individuals with direct involvement in the everyday business of the company." *In re BISYS Sec. Litig.*, 397 F. Supp. 2d 430, 438 (S.D.N.Y. 2005) (citation omitted); *cf. In re Interactive Network Sec. Litig.*, 948 F. Supp. 917, 920 (N.D. Cal. 1996) ("The rationale for group pleading is that facts about fraud flowing from the internal operation of a corporation are peculiarly, and often exclusively, within the control of the corporate insiders who manage the parts of the corporation involved in the fraud." (internal quotation marks and citation omitted)). The doctrine is "extremely limited in scope," G*oldin Assoc., L.L.C. v. Donaldson, Lufkin &*

8

*Jenrette Sec. Litig.*, No. 00-8688, 2003 WL 22218643, at *5 (S.D.N.Y. Sept. 25, 2003); it applies only to a limited number of corporate insiders. Reading the SEC's allegations generously, the Court found in *Espuelas I* that Scolnik, as Senior Vice President and later Executive Vice President, was such an insider. *Espuelas I*, 579 F. Supp. 2d at 473. Thus the group pleading doctrine saved the SEC from having to link Scolnik, in its amended complaint, to the actual preparation of StarMedia's misstatements.

The SEC must believe that group pleading is more powerful still, because it argues that Scolnik will be liable for securities fraud so long as the SEC proves she was a corporate insider—even if it does not prove she had a role in drafting, reviewing, or approving the misstatements. (*See* Pltf.'s Opp. 15–16; Tr. 29–30.) But this argument assumes that the doctrine is more than a pleading device, and the SEC has cited no authority for that proposition. There is good reason, moreover, to think that group pleading is and has always been just a pleading device, designed to aid plaintiffs at the pleading stage and prior to discovery but not to free them of their ultimate burden to link the defendant to the making of a misstatement. Judge Kaplan recently described the doctrine as arising in response to

> the rigors of Rule 9(b), which requires that averments of fraud be made with particularity. Recognizing that plaintiffs charging fraud with respect to corporate utterances seldom have access, prior to the commencement of discovery, to information permitting identification of the particular officers, directors and employees who bear personal responsibility for the utterances in question, courts developed the doctrine to permit plaintiffs, for pleading purposes only, to rely on [the doctrine].

*In re BISYS Sec. Litig.*, 397 F. Supp. 2d at 438 (internal quotation marks and citation omitted).[5]

---

[5] This analysis is consistent with the Second Circuit's early treatment of the idea, as in *Luce v. Edelstein*, 802 F.2d 49 (2d Cir. 1986). *Luce* involved Section 10(b) claims against a partnership and its partners for

Many other courts have assumed that the doctrine is, as its name suggests, a pleading tool rather than a substantive rule. *See The Pennsylvania Ave. Funds v. Inyx Inc.*, No. 08-6857, 2010 WL 743562, at *10 (S.D.N.Y. March 1, 2010) (doctrine is "solely for pleading purposes") (quoting *In re BISYS Sec. Litig.*, 397 F. Supp. 2d at 438); *Atkins v. Apollo Real Estate Advisors, L.P.*, No. 05-4365, 2008 WL 1926684, at *13 n.16 (E.D.N.Y. Apr. 30, 2008) (relaxing the pleading standard because, "[a]t this stage of the litigation, and because the Proposals and Preliminary Letters are unsigned, plaintiff cannot know or specify which individual or entity was behind each alleged act of fraud"); *Fraternity Fund Ltd. v. Beacon Hill Asset. Mgmt. LLC*, 376 F. Supp. 2d 385, 394 n.60 (S.D.N.Y. 2005) (defendants to whom group pleading doctrine applied were, "for purposes of this motion [to dismiss]," responsible even for statements others made); *Elliott Assocs., L.P. v. Hayes*, 141 F. Supp. 2d 344, 354 (S.D.N.Y. 2000) (applying group pleading doctrine on motion to dismiss because "plaintiffs are not expected to bear the burden of having to identify the role of each defendant in the fraud without the benefit of discovery") (quoting *Degulis v. LXR Biotech., Inc.*, 928 F. Supp. 1301, 1311–12 (S.D.N.Y. 1996)); *In re AnnTaylor Stores Sec. Litig.*, 807 F. Supp. 990, 1005 (S.D.N.Y. 1992) (doctrine allows plaintiffs to "leave development of individual liability questions until some discovery has been undertaken, rather than to dismiss the plaintiff because he does not have what may be concealed information" (internal quotation marks and citation omitted)); *Somerville v. Major Exploration, Inc.*, 576 F. Supp. 902, 911 (S.D.N.Y. 1983) (applying the doctrine to the pleadings while noting that "further specification of the

---

misstatements in a partnership offering document. The court there held that the complaint was not required to allege a "specific connection" between a fraudulent misstatement and particular defendants if those "defendants [we]re insiders or affiliates participating in the offer of the securities in question." *Id.* at 55. It set forth this principle in a section of its opinion entitled "Sufficiency of the Complaint," plainly in response to the pleading difficulties that Rule 9(b) posed for the plaintiffs.

10

[defendant's] allegedly wrongful role . . . is a task that the Federal Rules defer to the discovery state of litigation"); *cf. SEC v. Yuen*, 221 F.R.D. 631, 637 (C.D. Cal. 2004) (citing with approval a prior decision in that district for the proposition that "it is only appropriate to use the group published information doctrine in instances where no discovery has yet been conducted"); *In re Interactive*, 948 F. Supp. at 922 (the doctrine "is designed only to be a pleading device and not to be a hook on which to hang liability").

It is true that language in certain decisions could be construed to mean that the group pleading doctrine itself provides a basis for Section 10(b) liability—i.e., that it allows defendants to be held liable under Section 10(b) even without any evidence that they played a role in drafting or reviewing or disseminating the misstatement. *See In re Refco, Inc. Sec. Litig.*, 503 F. Supp. 2d 611, 643 (S.D.N.Y. 2007) (stating that a defendant could be "held liable" if "he falls within the group pleading doctrine"); *In re Alstom SA*, 406 F. Supp. 2d 433, 450 (S.D.N.Y. 2005) ("[a]llegations of membership on an Audit Committee may, in certain circumstances, provide a basis for liability under the group pleading doctrine"). But, made as they were in opinions resolving motions to dismiss, these statements are pure dicta as to whether the doctrine serves any purpose following discovery. The Court is aware of no authority in this Circuit for converting the pleading doctrine into a substantive ground for fraud liability.

Even if there were such authority, it is indisputable that the doctrine creates only a "presumption that certain kinds of statements were made by certain kinds of defendants." *In re BISYS Sec. Litig.*, 397 F. Supp. 2d at 440. Here, Scolnik has offered evidence that she "was never responsible for preparing, reviewing or approving filings made by

11

StarMedia with the SEC or statements StarMedia made to the public concerning its financial status." (Def.'s 56.1 Stmt. ¶ 11 (citing deposition testimony of Scolnik and Steven Heller, StarMedia's CFO).) Scolnik's evidence rebuts any presumption that, as a corporate insider, she must have had a hand in creating the StarMedia disclosures that contained misstatements. *Cf. In re Theragenics Corp. Sec. Litig.*, 105 F. Supp. 2d 1342, 1358 (N.D. Ga. 2000) ("[T]he group pleading doctrine is simply a rebuttable doctrine that the contents of company-published documents and press releases are attributable to officers and directors with inside knowledge of and involvement in the day-to-day affairs of a company."); *In re Silicon Graphics, Inc. Sec. Litig.*, 970 F. Supp. 746, 759 (N.D. Cal. 1997) (defendant may rebut group pleading presumption on summary judgment "by producing evidence that he had no involvement in creating the challenged document").

More importantly, the SEC agrees that Scolnik did not make any of the misstatements. It disputes Scolnik's Rule 56.1 statement only on the grounds that she provided BellSouth with unspecified financial information, she was involved in StarMedia's "day to day affairs," and she was involved in the suspect transactions. (Pltf.'s Response to Def.'s 56.1 Stmt. ¶ 11.) The SEC believes that these disputes present an issue of material fact about whether Scolnik was a corporate insider. (Pltf.'s Opp. 15–16.) Perhaps they do. But, contrary to the SEC's assumption, proving that Scolnik was a corporate insider while admitting she did not make misstatements is not enough to prove she committed securities fraud. *See SEC v. KPMG*, 412 F. Supp. 2d 349, 375 (S.D.N.Y. 2006) (to prove primary liability for a group-published document under Section 10(b), the SEC must show "that the defendant was sufficiently responsible for the statement—in effect, caused the statement to be made—and knew or had reason to know that the

statement would be disseminated to investors"). To withstand summary judgment, the SEC must also show that, in the face of Scolnik's evidence to the contrary, an issue of fact exists that she played a part in preparing, drafting, reviewing, or disseminating the public misstatements. *Cf. In re Global Crossing, Ltd. Sec. Litig.*, 322 F. Supp. 2d 319, 333 (S.D.N.Y. 2004) (Lynch, J.) (noting, on a motion to dismiss, that "[e]stablishing the actual extent of [the defendant auditor's] participation in making the [mis]statements will, of course, await summary judgment or trial"). It does not do so. Nor does the SEC claim that summary judgment would be premature given the prospect of uncovering evidence during discovery that Scolnik prepared or disseminated the statements. Instead, at oral argument, the SEC made nearly the opposite representation to the Court:

> The Court: . . . [T]here's no indication in any of the records that you cited that Ms. Scolnik had any involvement in the company's public statements.
>
> [SEC]: Not in the precise preparation of the statements, your Honor, but she was certainly involved—
>
> The Court: Did she sign them?
>
> [SEC]: No, your Honor, she did not sign them.
>
> The Court: Are you going to attempt to prove that she had personal involvement in the preparation of any of the public disclosures of the company?
>
> [SEC]: Not the specific document, not the specific documents, but the—
>
> The Court: And you concede that she didn't sign anything.
>
> [SEC]: Correct, your Honor.
>
> The Court: All right. So what is your argument on the first issue that [defense counsel] raises, that is, the making of a misstatement?
>
> [SEC]: That the document, that Ms. [Scolnik]'s role at the company was she was at the very high level, she was aware of the information

13

> with respect to the improper reporting of revenue as we have alleged. She was involved in the contingent transaction, she was involved in the incremental transaction, she was aware that that information was being used in the public disclosures and as a consequence should be attributed to her.

(Tr. 29–30.) Thus the SEC has *conceded* that it cannot and, indeed, will not seek to prove the factual predicate for Scolnik's liability for securities fraud: that she bore some personal responsibility for the misstatements such that they could be attributed to her. *See KPMG*, 412 F. Supp. 2d at 377 (granting summary judgment to an auditor on a primary claim under Section 10(b) because the SEC had failed to show he was responsible for misstatements in the auditing opinion). This is dispositive of the Section 17(a), Section 10(b), and Rule 10b-5 claims.[6] Scolnik is entitled to summary judgment on these claims.

## II.     Violations of Rule 13b2-1

In contrast to the claims discussed above, the Rule 13b2-1 claim against Scolnik does not require that a misstatement be attributed to her. Rule 13b2-1 provides that "[n]o person shall, directly or indirectly, falsify or cause to be falsified, any book, record or account subject to section 13(b)(2)(A). 17 C.F.R. § 240.13b2-1. Scienter is not required, and liability depends on "standards of reasonableness." *S.E.C. v. Softpoint, Inc.*, 958 F. Supp. 846, 866 (S.D.N.Y. 1997). The Court previously allowed this claim to survive a motion to dismiss because the SEC had adequately pled that Scolnik acted recklessly with respect to the contingent transactions, and reckless conduct is surely unreasonable. *Espuelas I*, 579 F. Supp. 2d at 486. Nothing has changed since that time.

---

[6] Scolnik argues that the group pleading doctrine does not apply because she is not a corporate insider. Because the Court finds the doctrine inapplicable at this stage of the proceedings, it does not address this argument.

14

It is true, as Scolnik is at pains to point out, that the SEC's evidence of Scolnik's scienter is remarkably thin. And without any such evidence that Scolnik knew the AMG and Danone transactions contained contingencies, it is hard to imagine how she could have acted unreasonably. Further, the Court is reluctant to allow the SEC to take discovery that it has essentially already taken during an investigation, to little effect. But, as explained above, this is the parties' right under the Federal Rules, and the Court will not interfere with it. *See* discussion *supra* Part I.A. Scolnik cannot win a motion for summary judgment on the ground that no triable issue remains when discovery has formally just begun. Accordingly, the Rule 13b2-1 claim, weak though it is, will survive.

## CONCLUSION

For the reasons stated above, Scolnik's motion for summary judgment **[75]** is granted as to the Section 17(a), Section 10(b), and Rule 10b-5 claims. It is denied as to the Rule 13b2-1 claim.

SO ORDERED.

Dated: New York, New York
       March 29, 2010

_____
Richard J. Holwell
United States District Judge